H. M. LOUD & SONS LUMBER CO. *v.* TOWNSHIP OF ELMER.

TAXES—PAYMENT UNDER PROTEST—OWNERSHIP OF LANDS—SUB-TERFUGE SALE.

> Where, in an action against a township to recover taxes paid under protest on the ground that the assessing officer had notice, before the assessment, that the lands had been sold and deeded to a nonresident, the agent of plaintiff, a lumber company, admitted on the stand that the sale was for a merely nominal consideration, and that the company afterwards continued to lumber the lands without giving credit to the grantee, and that the purpose of the transaction was really to place the property where it would not be subject to taxes, the court should have directed a verdict for defendant upon the ground that the alleged sale was a mere subterfuge to escape taxation.

Error to Oscoda; Simpson, J. Submitted January 3, 1900. Decided February 20, 1900.

*Assumpsit* by the H. M. Loud & Sons Lumber Company against the township of Elmer to recover taxes paid under protest. From a judgment for plaintiff, defendant brings error. Reversed.

*John A. McMahon* (*De Vere Hall,* of counsel), for appellant.

*Main J. Connine,* for appellee.

LONG, J. The plaintiff was the owner of a quantity of pine lands in the defendant township, Oscoda county, prior to March, 1894. These lands were deeded by a deed of quitclaim to one Charles Crofoot, of Plattsburg, Ohio, in March, 1894. The deed was sent to the office of the register of deeds of Oscoda county, but was not recorded, on account of unpaid taxes on the lands described. These lands were assessed to the plaintiff in

April, 1894, by the supervisor of the township. It appears that on April 7, 1894, Mr. George A. Loud, vice-president of the plaintiff, wrote the supervisor of defendant township that these lands had been conveyed to Crofoot, and asked that they be assessed to him. The supervisor, however, declined to do this, and assessed the lands to plaintiff. The plaintiff paid the taxes under protest on February 26, 1895, and on March 5, 1895, commenced this suit to recover the moneys so paid. On the trial the plaintiff called Mr. George A. Loud as a witness, who testified to the transfer of the lands to Mr. Crofoot. On cross-examination he testified as follows:

"A large portion of these lands in 1894 were stripped of timber previous to that time. I could not say how long previous. It ranges from a considerable space of time to one, two, or three years. The timber was taken from them from 1891 to 1894, inclusive. By '1894' I mean the winter of 1893–94. We did not get through lumbering there in the spring of 1894 on all of them. On the last page of the exhibit there were three descriptions still had timber on them, partly. All of the others were presumed to be stripped. There was another description that had not been lumbered,—up in 10,—making four. The plaintiff did the lumbering, and at the time it was done the title stood in the plaintiff, I think. I do not know from whom the plaintiff purchased these lands. It buys lands from different persons. Most of them have been owned for a number of years. I knew Mr. Crofoot. He was a farmer. His wife's name is Martha. She is my cousin. I acted for the corporation in making the deal by which the lands were sold to Crofoot. It was at Oscoda, and Mr. Crofoot was there. He did not go to look at the lands. I described the nature of them to him, and the deal was made at that time. * * * The lands were all included in one instrument,—a quitclaim deed. I cannot recall the exact consideration, but it was a nominal consideration. I believed the timber had all been removed from the lands, practically.

"Q. And these lands were put in his name because he was a nonresident of the State, were they not, Mr. Loud?

"A. They were sold to him because we did not want them.

" *Q.* Wasn't it for the purpose of placing them where you would know your property would not be subject to a levy for the taxes?

"*A.* I presume that would be a fair statement of the proposition. We had no further use for them, and gave them away for a nominal consideration.

" *Q.* Now, you found the taxes, I suppose, somewhat of a burden on those lands?

"*A.* We did.

" *Q.* And the purpose in so placing them was to have that burden removed. Have I got that right?

"*A.* Practically."

The witness further testified that, after the conveyance to Crofoot, plaintiff drew the deeds from Crofoot when any of the lands were sold, acted as adviser about sales, fixed the prices for which sales should be made, and took timber from the lands as before the deed was made; that the timber removed belonged to plaintiff, and was mixed with the remaining timber taken from its other lands, and no account thereof kept, and no credit given Crofoot therefor; that it was the understanding that it should continue to own the timber, although not reserved in the deed; that, after the deed to Crofoot, no direction was given the wood superintendent, Mr. Parks, to mark the lands off his plat-book, and that on his and George A. Loud's books the lands still appeared as plaintiff's; that it had deeded other lands to Crofoot under similar arrangements; that George A. Loud, without consulting Crofoot, bought other lands from the receivers of the Potts Salt & Lumber Company in his (Crofoot's) name, fixed the price to be paid therefor, and took the timber therefrom; that, when the deed was delivered to Crofoot, it was handed back to witness, to be placed on record; that the deed remained in plaintiff's control until after the second Monday of April, 1894.

At the close of the testimony, counsel for defendant asked the court to charge the jury:

" (2) The deed to Crofoot would not prevent the supervisor assessing the land to plaintiff unless it was the inten-

tion of the parties thereto to convey and receive title thereunder, and, if such was not the intention, the assessment for the year 1894 to plaintiff was legal and valid."

"(4) If you find that plaintiff owns any interest in the lands deeded to Crofoot, notwithstanding the deed to him, plaintiff cannot recover the taxes assessed thereon.

"(5) The good faith of the parties to the deed may be determined by facts and circumstances regarding plaintiff's dealings with the lands after deed was delivered,— the fact that plaintiff sold the lands for a nominal consideration; that Crofoot made no examination of the lands before the purchase; that sales of said lands have been made through plaintiff's officers since such deed was delivered; that plaintiff sent the deed to the register of deeds for record; that plaintiff lumbered some of the lands since they were deeded; that the Potts lands were bought by plaintiff in Crofoot's name, and timber removed by it, without consultation with him; and such other facts and circumstances, if any, as create the belief in your minds that the transaction was not had in good faith."

"(8) Notwithstanding notice was given the supervisor that the lands had been sold to Crofoot, he would be authorized to assess them to plaintiff if the purpose of the conveyance was merely to avoid taxation, and not to make a sale in good faith to Crofoot."

These requests were refused. The court, after stating to the jury that the deed was made to Crofoot, said:

"Now, gentlemen of the jury, if by that deed that company absolutely transferred their title and interest in that land to Mr. Crofoot, Mr. Randall had no right to put it into the rolls against them; and that is the only question you have got to settle. Because, if he hadn't any right to put it there, they have a right to recover the entire amount of that tax, with interest at 6 per cent. from the time they paid it up to the present time, for the taxes and charges which they have paid. And, if they are entitled to recover anything, they are entitled to recover the whole of it. If they are not entitled to recover the whole of it, they are not entitled to recover anything. There can be no compromise in this matter, or any division. If they conveyed that land and parted with their title to it to Mr. Crofoot, and Mr. Randall was notified of it (and he was; there is no question on that), then I say the land was illegally assessed against them, they did not own it, and they

had no more right to pay it than you would if it had been assessed to you; and, I say, if you find that to be the fact, then they are entitled to recover the whole amount,—every cent of it,—with interest at 6 per cent. We are not here to divide anything. We are here to do what we do properly. Now, then, gentlemen of the jury, they did convey it, they did make a deed, and they did notify Mr. Randall; but the defense (the township of Elmer, by its officers) in this case claims that this was not an actual transfer. They dispute it and deny it, and that has led to considerable controversy and considerable evidence. That has led into an examination of how the transfer was made, and where it was made, and when it was made, and what was done about it, and what has been done since with the lands. The defendant claims that this was merely a subterfuge, and that it was not a fact, and says that, although a deed was made, no title was transferred; and it claims that the plaintiff owned it just as much after it was made as before. Of course, as I stated to you before, the transaction must be such a one as to make the ownership of the lands belong to Crofoot. You all know what that is,—what passing the ownership from one man to the other is. The making of a deed is evidence of a transfer; the making and delivery of it transfers the title; and the only question you have got to settle in this case is, not whether the deed was made, because that is settled, it was made; not whether Mr. Randall knew it, because that is settled, he did know it,—but was there an actual sale of the land itself, transferring the property from the H. M. Loud & Sons Lumber Company to Mr. Crofoot? If there was, they are entitled to recover,—the company is entitled to recover in this case. Of course, if there was not, then they would have to pay the taxes on it; and that is a question of fact that you have got to settle. When you come to that point, I am done. * * *"

The court should have given the requests tendered by counsel for defendant. It was admitted by Mr. Loud that the purpose of making the deed was to place the property where it would not be subject to taxation; and it is evident from his further examination that it was not intended, in making the deed, to place the title absolutely in Mr. Crofoot, or, at least, it was the intention of the

123 MICH.—5.

parties that the plaintiff should have such control over the lands that it could cut and remove any timber remaining thereon, and finally to have charge and control of any sales that might thereafter be made of the lands. It is apparent that this deed to Crofoot was a mere subterfuge, and made for the very purpose of escaping taxation; and the court, under the testimony of Mr. Loud, should have directed the verdict for defendant as to all taxes, except on the Burrows & Rust and Mosher descriptions. We think the testimony was not sufficient to warrant the instruction that plaintiff was bound to pay the taxes on these lands, and that the court correctly stated the law as to the rights of the parties in relation to the taxes on those descriptions.[1]

Judgment below must be reversed, and a new trial granted.

The other Justices concurred.

[1] Appellant's application for rehearing on this point was denied May 18, 1900.